# TEAMSTERS JOINT COUNCIL NO. 73

### AFFILIATED WITH THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS



2414 Morris Avenue • Union, New Jersey 07083 • Phone: (908) 686-8450 • Fax: (908) 964-8991

DONALD DI LEO, President
GREGORY LUCIDI, Vice President
ALPHONSE RISPOLI, JR., Secretary-Treasurer
MARK McENTEE, Recording Secretary
JOHN HUMPHREY, Trustee
ANTHONY ARTIFICIO, Trustee
JAMES MAJOCHA, Trustee

January 9, 2004

Mr. Mark Kleinerman
31-19 Morlot Avenue
Fairlawn   NJ   07410-0425

Dear Sir and Brother:

Enclosed please find the Decision of the Joint Council No. 73 Executive Board regarding the recently concluded election of Officers in Local Union No. 97.

If you have any questions, please do not hesitate to contact this office.

Fraternally,

Donald DiLeo
President

DDL/rc
enclosure


PLAINTIFF'S
EXHIBIT

A

ALL-STATE LEGAL®



## DECISION – IBT Local 97 Election Appeal

Pursuant to the authority granted by the International Brotherhood of Teamsters Constitution, the Executive Board of IBT Joint Council 73 conducted a hearing for the appeals filed after the election of officers conducted by IBT Local 97. The Executive Board of Joint Council No. 73 conducted a hearing on December 8, 2003. After consideration of all the issues, the Executive Board issues the following decision.

By way of background, the New Jersey State Board of Mediation conducted a mail ballot election for Officers of Local 97. The positions of four officers and three trustees were at issue. Ballots were mailed on October 20, 2003. The ballots were first counted on November 20, 2003. A recount was conducted on December 5, 2003.

There were two slates of candidates: the "Great Slate" and the "Team With Integrity". The "Great Slate" was composed primarily of incumbents; the "Team With Integrity" was composed of challengers. After the election count on November 20, 2003, both slates filed timely protests of the election with the Secretary-Treasurer of Joint Council 73. A recount was conducted on December 5, 2003. Although there was some difference in the vote count between the original count and the recount, the results did not change except for the position of Secretary-Treasurer. In the original count, each candidate for Secretary-Treasurer received 568 votes. In the recount, the candidate from the "Team With Integrity" won by one vote over the candidate for the

"Great Slate" with a vote of 654 to 653.  For the other offices, candidates from the "Great Slate" won.

Both slates filed timely protests pursuant to Article XXII (5)(b) of the International Constitution.  The Executive Board of Joint Council 73 scheduled a hearing on December 8, 2003.  Representatives of both slates appeared at the hearing and presented testimony and documents.  Both parties were given every opportunity to present testimony, written materials and oral argument in support of their respective positions.

The Executive Board has considered all of the evidence and testimony presented at the hearing.  As discussed below, because the errors could affect the outcome, the Executive Board has unanimously decided to set aside the election and to order a new election.  We want to emphasize that our decision is not based upon the allegations of misconduct by either slate.   It was not necessary to reach those issues.  Our decision is based upon errors in the election made by New Jersey State Board of Mediation, the agency which conducted the election.  In this election appeal, as in any election appeal to come before this Executive Board, our goal is to insure that members have had the opportunity to fully and freely exercise their right to vote for the candidates of their own choosing.



There were two basic problems in the election which form the basis for our decision. First, the State Board permitted candidates to remain on the ballot even though there were questions about their eligibility and they were ultimately declared ineligible. Second, the State Board mailed an undetermined number of ballots involving different elections for different local unions to Local 97 members. We will deal with each issue separately.

The first issue concerns the eligibility of two candidates on the "Team With Integrity" Slate. Although the Executive Board was not presented with any confirmation in writing, it appears that there was no disagreement that two candidates for the position of Trustee, Manny Segundo and Rita Washington, were ineligible to run for office and their appeals were denied by General President Hoffa. There was some suggestion in the documents submitted by the "Team With Integrity" Slate during the hearing that the candidate for President of the "Great Slate," John Gerow, agreed that the two candidates could remain on the ballot. The IBT Constitution does not give any officer or member the right to waive eligibility for office. The Constitution contains provisions governing eligibility for nomination. If any questions are raised about a candidate's eligibility, those questions must be resolved before the election. Any candidate who is declared ineligible cannot run for office regardless of whether others agree to allow the candidacy in those circumstances. When the new election is held, only eligible candidates are permitted to run for office and any

questions concerning the eligibility must be resolved before ballots are sent to members.

The second issue involves the use of ballots from other elections. There is no dispute that ballots for the wrong election were used although there was some disagreement on the number of ballots involved. At the same time that it was conducting the election for Local 97, the State Board of Mediation was also conducting elections for IBT Local 194 and a Local 197. Although it was not entirely clear whether ballots for a Local 197 were sent, there was no dispute that Local 97 members received ballots for an election involving IBT Local 194. There is some disagreement on the number of incorrect ballots sent. The "Team of Integrity" asserted that at least 22 eligible voters received the wrong ballots for the wrong local; according to the "Great Slate" there may have been 10 incorrect ballots sent. Regardless of the number of ballots, there is no dispute that these ballots could have been determinative and certainly could have confused the members receiving them.

For these reasons, it is the unanimous decision of the Executive Board of Joint Council 73 that the election be set aside. Our decision is based solely upon the conduct of the State Board of Mediation and not upon any allegations of misconduct by either the slate of candidates. Because the problems discussed above could affect the outcome of the election, we have decided to set the election aside and to order Local 97 to conduct a new election according to the

4

International Constitution, the Constitution and Bylaws of Local 97 and the September 6, 2002 IBT "Guidelines for Conducting Local Union Elections" as soon as possible. Furthermore, in light of this decision, we order that the new election must be conducted by a neutral agency which conducts local union elections, other than the New Jersey State Board of Mediation.

Donald DiLeo, President for the Executive Board

5

# INTERNATIONAL
# BROTHERHOOD OF TEAMSTERS
### AFL-CIO



OFFICE OF
JAMES P. HOFFA
GENERAL PRESIDENT

January 15, 2004

Mr. John J. Gerow, President
Teamsters Local Union 97
485 Chestnut Street
Union, New Jersey 07083

Dear Sir and Brother:

This is in response to your letter of January 12, 2004, requesting a stay of the effectiveness of a decision of Joint Council 73 ordering the Local to conduct a new election of officers. You have indicated that it is your intention to appeal the Joint Council's decision on behalf of the Local Union.

Pursuant to your request and the authority vested in this office by Article XIX, Section 10 of the International Constitution, a stay of the effectiveness of the Joint Council's decision is hereby granted. You must file a timely appeal of the decision in accordance with the fifteen-day time limit set forth in Article XIX, Section 2(a) of the International Constitution.

Fraternally yours,

James P. Hoffa
General President

JPH/gwb

cc: Teamsters Joint Council 73



G

**Mark Kleinerman**
**Presidential Candidate and Leader of Slate**
**for Local No. 97**
**31-19 Morlot Avenue**
**Fairlawn, NJ 07410-4025**
**(201) 921-2778**

January 31, 2004

<u>VIA OVERNIGHT MAIL & VIA FAX</u>

Mr. James P. Hoffa, Jr., General President
International Brotherhood of Teamsters AFL-CIO
25 Louisiana Avenue, N.W.
Washington, D.C. 20001-2198

**Re:   Election for Officers of Local 97**

Dear Mr. Hoffa:

Enclosed is a copy of a letter which I sent to Mr. Gerow re: the above requesting immediate implementation of the determination of the Joint Council that there must be a new election.

This determination is based upon major material problems with the manner in which the election was conducted.  During the course of the election, we regularly protested to you irregularities in the election including the willful violation of federal law and Teamster procedures by Mr. Gerow in failing to provide me or my slate with mailing lists for members or to even send out my slates' mailings when we delivered our material to Mr. Gerow's office along with proof of our being ready to pay for mailings made by his office.  Mr. Gerow did use Teamsters mailing lists in sending out his own campaign material.

Despite the derelictions of Mr. Gerow in the election, one of my candidates was successful by a few votes in winning the election for Secretary-Treasurer, and I lost by only a few votes.

To my utter astonishment, I now find that Mr. Gerow continues his derelictions by apparently appealing the determination of the Joint Council to you without even providing me with a copy of the appeal or with the chance to provide our position, or oppose any application to you to restrain



Mr. James P. Hoffa, Jr. General President
Page 2
January 31, 2004


the election results. His "unilateral appeal" has resulted in the attached January 15 letter from you to Mr. Gerow staying "the effectiveness of the Joint Council's decision."

We believe that there was no timely appeal within the 15 day time limit and certainly even if an appeal was presented to you in that time frame, it is untimely since it was not presented to me.

The first time we heard of anything was when we received the attached letter of Mr. Gerow dated January 22.

We are in possession of the transcript of the lengthy proceedings before the Joint Council and believe that the transcript itself as well as the decision clearly demonstrate the need for an immediate new election, dissolution of any restraint ordered by you, and a true third party neutral agency being in charge, so that at a minimum my slate has equal access to the premises of the employer with the cooperation of Local 97, complete and fair access to mailing lists pursuant to proper Teamsters procedures, and other requirements which are consistent with a fair election.

We thank Mr. Witlin, of your Legal Department for responding to our telephone request for a copy of Mr. Gerow's appeal of the decision of the Joint Council. As soon as we receive that decision, we will respond further to his appeal, but hope that you will dissolve the restraints now, particularly since we did not have the chance to present our position in opposition to the restraints.

Fraternally yours,

MARK KLEINERMAN,
Presidential Candidate
Team with Integrity


Enclosures
cc:     Honorable Don DiLeo, President Joint Council #73 (VIA FAX AND OVERNIGHT MAIL)
        Mr. John J. Gerow, President, Local 97
        Mr. Witlin, Teamsters Legal Department

**Mark Kleinerman**
**Presidential Candidate and Leader of Slate**
**for Local No. 97**
**31-19 Morlot Avenue**
**Fairlawn, NJ 07410-4025**
**(201) 921-2778**

February 24, 2004

**VIA FAX:**  (202) 624-8110 (without enclosures)
**VIA FEDERAL EXPRESS:**  (202) 624-6800 (with enclosures)

Mr. James P. Hoffa, Jr., General President
International Brotherhood of Teamsters AFL-CIO
25 Louisiana Avenue, N.W.
Washington, D.C. 20001-2198

**Re:**   **Election of Officers for Local 97**

Dear Mr. Hoffa:

As you know, I am the presidential candidate for the slate known as the Team with Integrity. Mr. John Gerow is the presidential candidate for the slate known as the Great Slate.

Ballots were mailed on October 20, 2003 under the auspices of the New Jersey State Board of Mediation. The ballots were first counted on November 20, 2003. A recount was conducted on December 5, 2003.

The results of the recount were unclear and close.

They showed, subject to a needed new election, as ordered by the Joint Council, that the candidate of the Team with Integrity for Secretary-Treasurer, Pat Ward-Jenkins was a winner by a vote of 654 to 653, and that I lost by 21 votes, namely 667 to 646. Other votes were also very close, particularly considering the following:

## 1. INTRODUCTORY REMARKS

There were over 10,000 full dues-paying members. Accordingly, there were ballots mailed to a little over 10,000 dues-paying members. Over 3,000 addresses provided by Local No. 97 were inaccurate and were returned to the State Board of Mediation and, therefore, did not vote. Of the

PLAINTIFF'S EXHIBIT

D

ALL-STATE LEGAL®

Mr. James P. Hoffa, Jr. General President
Page 2
February 24, 2004

approximately 7,000 who received ballots, 5,512 did not return their ballots and only 1,488 voted. Accordingly, about 21% of those who received ballots voted. Because of errors in addresses by Local No. 97's incumbents, 3,000 or 30% never received ballots. About 14% of the eligible voters actually had their votes counted. The voting would have been much higher by at least hundreds and at most thousands but for the error of the New Jersey Board of Mediation in sending out the wrong ballots for two other elections, and other "unspeakable" errors.

Further, the undisputed facts as set forth hereafter, in the record below, which consists primarily of the testimony of myself and other Team with Integrity members and of my extensive written Exhibits, are that large numbers of mistaken ballots were sent by the New Jersey State Board of Mediation to Local No. 97. These ballots were for two other different elections, namely for "Teamster Local Union 194" and "Local 197." The record is clear (as contrasted by statements made not based on the record by Mr. Gerow) that there had to be at least several hundred of these ballots mistakenly sent out. My testimony under oath and submissions which were made on the record demonstrate that there was great confusion over these ballots. My supporters who received these mistaken ballots in great numbers called me or other members of my team including my primary campaign aide and witness, Mr. Jose Reyes. As noted, these numbers had to be at least in excess of several hundred. Twenty-two of these individuals returned ballots. All of these returns were challenged by Mr. Gerow, and indicated a vote for my slate although these are not reflected in the results.

There are other major issues raised in the record of the proceedings before the Joint Council. This, of course, is the record to which I refer.

These issues were not addressed by the Joint Council since it thought that the issue of the mailing of the wrong ballot to the right voters along with one other issue involving two candidates, separately each justified a new election particularly in view of the razor thin margins in this election.

Needless to say, as you know because I have made protests throughout the election process, the other objection issues include objections which were not and need not have been addressed by the Joint Council because of its decision. These other objections which were raised by me, include but are not limited to the following:

(a)     Failure of the Gerow incumbents to provide me with any basis or addresses for mailing information to members, at the same time that Gerow used these internal mailing lists for his own purposes.

(b)     Failure of the Gerow incumbents to process membership cards for large numbers of members brought in by us.

Mr. James P. Hoffa, Jr. General President
Page 3
February 24, 2004

Although the latter two (a and b) are clear violations of the Teamsters Constitution and federal law, there are many other violations which are raised in my submissions and referred to hereafter.

## 2. JOINT COUNCIL PROCEEDINGS AND DETERMINATION

The determination of the Joint Council, a copy of which is attached (A), refers to some of the background set forth above. The proceedings before the Joint Council consumed an entire day. My attorney, John Feeley, was present although as per the procedures in these proceedings he was not allowed into the hearing room but was available outside for consultation.

I submitted and there was introduced into evidence a comprehensive set of documents and statement of facts and position (B). I am sending this to you along with a hard copy of this letter by overnight mail. This submission consists of twelve typewritten pages and Exhibits A through O.

We are also sending by overnight mail the transcript of the proceedings (C). As the transcript demonstrates, the testimony was primarily if not almost exclusively by me and my witnesses who were Jose Reyes, Benny Cardona, Pat Jenkins-Ward, and Sylvester Mcelhaney.

Mr. Gerow in his appeal which we have only received recently since he never provided it to us, makes claims as to facts which are simply not in the record.

All of the claims which are referred to in my preliminary statement above are supported by the record, in particular those parts of our claims which were upheld by Teamsters Joint Council No. 73 in its decision which is dated January 9 and is attached to this letter to you (A).

The critical part of that decision is the use of ballots from other elections. The determination of the Joint Council, therefore, includes the following: "There is no dispute but ballots for the wrong election were used although there was some disagreement on the number of ballots involved. At the same time that it was conducting the election for Local 97, the State Board of Mediation was also conducting elections for IBT Local 194 and a Local 197 * * *. The "Team with Integrity" asserted that at least 22 eligible voters received the wrong ballots for the wrong Local. * * * Regardless of the number of ballots, there is no dispute that these ballots could have been determinative and certainly could have been confused the members receiving them."

The determination of the Joint Council 73 Executive Board was unanimous. It heard the testimony, it listened to the evidence, and it made a decision based upon the record.

The Joint Council also addressed the issue of a possible error in two candidates of the Team with Integrity perhaps not properly being on the slate, namely Manny Segundo because of a name

Mr. James P. Hoffa, Jr. General President
Page 4
February 24, 2004

issue, and Rita Washington because of a dues issue. By agreement of the parties, these names were left on the slate. Mr. Gerow and the State Board of Mediation participated in that agreement. The issue of the status of these individuals who were declared ineligible by Mr. Gerow's incumbents is presently under appeal and we are awaiting a determination as to this situation. The Joint Council determined that when "the new election is held only eligible candidates are permitted to run for office." Accordingly, the Joint Council's determination is based primarily upon the egregious and unheard of error of ballots being sent for an IBT Local 194 election and a Local 197 election to voters in this election. We expect that at the new election, there will be rulings on the eligibility of Manny Segundo and Rita Washington.

## 3. FURTHER BACKGROUND INFORMATION

I was never advised that an appeal was filed by Mr. Gerow to you until well after the determination of the Joint Council. As a result, on January 14, I sent the attached letter (D) to Mr. Gerow requesting immediate implementation of the Joint Council determination and stating further our position that Manny Segundo should be on the ballot. If it is desired that another name be used for him, this could be done, although we believe the name Manny Segundo is the proper name. We also stated that Rita Washington has been a proper member and is now certainly a proper member who should be allowed to remain on the ballot. We reiterated our requests for information on mailing and the processing of membership cards provided by us, promptly, rather than never or much later as has been the case in the past in the handling of these issues by Mr. Gerow.

To our surprise, Mr. Gerow sent us on January 22, 2004 (E) not a copy of his appeal, but a letter dated January 15 telling us that there had been a stay in the Joint Council's decision by you dated January 15 (F).

We responded by our January 31 letter (G) to you, a copy of which is attached, in which we ask you to lift the stay and indicated that we would provide further information as soon as we received Mr. Gerow's appeal.

We now have finally, although informally received the Gerow appeal dated January 23, but never sent to us. We reply to that appeal. We never saw the request for a stay of the Joint Council decision or were allowed or asked to present our opposition to the request.

## 4. THE ISSUE OF THE WRONG BALLOTS FOR TEAMSTERS LOCAL 194 AND LOCAL 197 BEING SENT TO PROPER VOTING MEMBERS OF LOCAL 97

We have in part addressed this issue above.

Mr. James P. Hoffa, Jr. General President
Page 5
February 24, 2004

Mr. Gerow in item 3 beginning at page 10 of his submission to you, which he never sent to us, and has not been formally received by us, states a position which has no support in the record.

We are sending as we advised you, by separate submission, our Exhibits and statements which were before the Joint Council (B), as well as the transcript (C) because although we know you were supposed to receive these from Mr. Gerow or the Joint Council, we have been excluded by Mr. Gerow as we were throughout the election, from any legitimate participation in the process.

We attach for your information certain relevant copies of the record in this regard as follows:

1.     Pages 3 and 4 of Paragraph 2 of the 12 page submission (H).

2.     Exhibit M of our submission to the Joint Council, which shows one example of the apparently several hundred ballots sent out in error for either Local 194 or 197 (I).

3.     Pages 22, 23, 24, and 25 of the transcript (J) of part of Mr. Kleinerman's testimony in which there is reference, uncontradicted on the record, of the likelihood of large numbers of these wrong ballots being sent out.

There is nothing hypothetical about any of this.  At least 22 of the wrong ballots were received and challenged. These ballots were examined and clearly all intended to vote for my slate, the Team with Integrity.  If these were counted, Mr. Kleinerman (me) would win.

It is clear from the uncontradicted record that there had to be several hundred of these wrong ballots sent out largely to my supporters, but not returned because of the confusion!.

I received telephone calls, as noted in the record, from large numbers of my supporters who received the wrong ballots and did not know what to do with them. Of that large number, only 22 returned ballots. Of that number, some said in writing that they received the wrong ballot but wanted the Board of Mediation to know that they were voting for the Team with Integrity. Others put x's in the lefthand column which was the Team with Integrity column.  Unfortunately, the many hundreds who received ballots which were wrong, never did send them in.

You should note further that because of the incumbent's misconduct, many employees whose membership cards were submitted did not have their records corrected to show that they were members, and, therefore, were denied the right to vote.  These were all Team with Integrity supporters. Many others, in this case over 3,000, had wrong addresses. More importantly, as noted above, of the 7,000 who received ballots, only about 15% (1488) voted. Clearly, therefore, there were at least 6 times 22 (132) but very likely many more ballots received for the wrong unions, namely Local 194 or 197. I fielded the telephone calls from my supporters who received the wrong

Mr. James P. Hoffa, Jr. General President
Page 6
February 24, 2004

ballots yet only 22 of these large numbers of callers returned their ballots. At least six times that number received ballots, but more likely several hundred based upon the calls received by me or my team. The Joint Council heard the testimony and assessed the evidence, and its position was clear that, as follows: "(page 4) For these reasons, it is the unanimous decision of the Executive Board of Joint Council 73 that the election be set aside. Our decision is based solely upon the conduct of the State Board of Mediation and not upon any allegations of misconduct by either of the slate of candidates. Because the problems discussed above could affect the outcome of the election, we have decided to set the election aside and to order Local 97 to conduct a new election according to the International Constitution, * * *."

Mr. Gerow's appeal to you from the Joint Council's decision even states in part that at the very least there should be a new election for Mr. Kleinerman, the presidential candidate, and Ms. Jenkins-Ward, the candidate for Secretary-Treasurer (his page 11). This is, to say the least, an odd position since it is clear that the unprecedented error of the New Jersey State Board of Mediation mandates not just an election for two of the candidates as sought by Mr. Gerow, but an election for all candidates. On his page 12, curiously, Mr. Gerow seeks a new election "for the position of Secretary-Treasurer and Trustees."

Deference must be given to what obviously are very serious errors in this election as determined by the Joint Council.

The attachments show, as per my Exhibit I, how serious these errors were. Exhibit I shows an actual notice of election for "Teamsters Local Union 194 seeking to have the recipient of the Notice vote for either the "Unity Slate" or the "Degrazio - Guthneck slate"." This ballot in this case was returned to the right place for Local 97 with the wrong ballot. On this one anyway, unlike others who did not send in their ballots, (they probably almost all would have voted for Mr. Kleinerman). There was a notation on it that there was an error.

The record and the testimony were assessed by the members of the Joint Council. They undoubtedly believed in Mr. Kleinerman's unopposed statements (Mr. Gerow presented very little by way of testimony or cross-examination) as to the extent of the impact of the New Jersey State Board of Mediation's error.

As is set forth in the record by me on page 4 of my written submission, and accepted by the Joint Council: "In view of the large number of ballots which were not returned, it is likely that a very large additional number (beyond the 22) of improper ballots were sent out to eligible voters in the Local 97 election but for a different election and were not returned as result of this confusion."

In addition, in the attached testimony the same comments are made under oath by me and not opposed by Mr. Gerow on the record that (see page 23): "In view of the large number of ballots

Mr. James P. Hoffa, Jr. General President
Page 7
February 24, 2004

which were not returned, it is likely that a very large additional number (beyond the 22) of improper ballots were sent out to the eligible voters in the Local 97 election but for a different election and were not returned as a result of this confusion. * * * These members obviously called either myself up or my constituents on the slate saying I called up for a ballot, I didn't receive it, instead I received a ballot for another election for 194 or 197. We informed them that you received this ballot in error. Who do you want to vote for?"

Therefore, unlike the unsupported statements of Mr. Gerow in his appeal to you, the record demonstrates complete support for the determination of the Joint Council on this issue.

## 5. ADDITIONAL COMMENTS

As noted above, the Joint Council specifically determined that because of its findings with regard to the conduct of the election in sending out wrong ballots to the right people, in large numbers, it was unnecessary for it to determine any issues claiming misconduct.

Needless to say, both the record and the submissions of the "Team with Integrity" show unopposed documented evidence of rank and gross misconduct in violations of federal law by Mr. Gerow. As a matter of fact, even Mr. Gerow and his Secretary-Treasurer Donato DiMola, protested the election presumably seeking a new election. There is no record to show Mr. Gerow withdrawing his protest although now he says he does. However, Mr. DiMola who lost to my candidate for Secretary-Treasurer, Ms Jenkins, never withdrew his protest. Accordingly, we have a situation where both sides sought a new election. It would seem that this situation alone would support the Joint Council determination.

To make matters even worse, as is set forth in my submissions, we submitted overwhelming proof of willful violations by Mr. Gerow in failing to provide us with access to mailing lists or to at our expense give our mailings to members, at the same time that he was doing this for his own benefit and his slate's benefit.

Further, we outlined other serious violations which are clearly documented, namely the failure and refusal to process membership cards submitted by me, which would have allowed many hundreds of individuals who are our supporters to be members and be allowed to vote. All of these things as well as other violations are in the record and were not necessary to be determined by the Joint Council in its decision. We note especially that they are rank violations of federal law, and of Teamsters election procedures. These are only two of the many violations which are part of the record which need not have been reached by the Joint Council in its determination.

Mr. James P. Hoffa, Jr. General President
Page 8
February 24, 2004

We believe, as set forth above, that the Joint Council's unanimous decision was amply supported by the record and that there should be a complete new election.

Even now, Mr. Gerow refuses to provide us with information and lists. A recent event involves in addition, his refusal at the request of the Secretary-Treasurer, Ms. Jenkins of my slate, that membership cards be processed. In other words, the failure to provide a prompt new election allows misconduct to continue, and regular, fair, and democratic procedures to be disregarded.

## 6. BRIEF REMARKS ON THE STATUS OF THE RECORD WITH REGARD TO THE FOLLOWING TEAM WITH INTEGRITY CANDIDATES FOR TRUSTEE: MANNY SEGUNDO AND RITA WASHINGTON

These two individuals should be allowed to be on the ballot in the new election notwithstanding that at the time the New Jersey State Board of Mediation mailed out its ballots, something agreed to by Mr. Gerow, their status had been disputed by Mr. Gerow whose Local declared them disqualified. You have received our letters of appeal, which set forth the Team with Integrity's position as to Manny Segundo and Rita Washington. The gist of the status is that Manny Segundo is the name commonly used by this individual during his 15 years of membership in which dues have been deducted for him. In order to avoid confusion with relatives who work or worked where he works, the name Manny Segundo has been used. Rita Washington had a brief absence due to giving birth and her dues are paid up. They should both be qualified to participate for the offices in question in the new election and should have been qualified in the old election given the appeals. We are still awaiting a decision on these appeals from you.

## 7. THE LAW

We do not agree, therefore, with the analysis of the facts and the statement of facts as submitted by Mr. Gerow. We are not dealing with his inaccuracies item by item, but deal primarily with the main issue which he seeks to avoid, namely the egregious errors in sending the ballots for two different elections to members who supported the "Team with Integrity" and others in this election.

The issue of the status of Manny Segundo and Rita Washington should be solved at the new election when the membership status of one can be clarified and the appropriate name of the other can be used.

There is no question that the problems referred to by the Joint Council may have "affected the outcome" of the election. This is the legal standard referred to by Mr. Gerow and we note that

Mr. James P. Hoffa, Jr. General President
Page 9
February 24, 2004

the words are "may have affected." There could be no greater error than the error here which may have affected this election, particularly with a margin of one vote for one candidate (Secretary-Treasurer) and of 21 votes for the presidential candidate, when the evidence shows that 22 of the wrong ballots if all counted would have resulted in me, Mr. Kleinerman, being the winning presidential candidate. As a matter of fact, under these circumstance, the Joint Council could have declared me a winner since my testimony as to the 22 votes is uncontradicted. However, the record shows that hundreds of the wrong ballots were sent.

So much for the law on these issues.

## 8.  CONCLUSION

This is probably one of the worst examples, if not the worst example, of misuse of the election process by an incumbent, Mr. Gerow, to prevent the democratic process of a fair election from going forward. It is sufficient to note the uncontradicted testimony about the willful refusal to provide identification of locations for me (the "Team with Integrity") to campaign, to provide mailing lists or mailings while Mr. Gerow used mailing lists for his own campaign, to process membership cards of voters who would have voted for me, and most importantly, for ballots for the wrong election going to candidates who support me. As noted above, the untenable process of having the "tainted" candidate Mr. Gerow remain in office has already caused internal problems within Local 97. There is no other way to deal with this incredible miscarriage of justice except to immediately allow the new election to go forward.

Respectfully submitted,

MARK KLEINERMAN,
Presidential Candidate
Team with Integrity

Enclosure

cc:    Mr. John J. Gerow (VIA FAX & REGULAR MAIL)
       Mr. Don DiLeo, President, Executive Board, Joint Council #73 (VIA FAX & REGULAR MAIL)

## LA ROCCA , FEELEY& SMITH, L.L.C.
### ATTORNEYS AT LAW
76 SOUTH ORANGE AVENUE, SUITE 211
SOUTH ORANGE, NEW JERSEY 07079

*TELEPHONE:* (973) 763-6100
*FACSIMILE:* (973) 763-5600

TONY LA ROCCA
JOHN D. FEELEY *
TIMOTHY R. SMITH*
* Admitted in New Jersey & D.C.
-----------------------------------
NICHOLAS J. FANO
GEORGE W. CONK+
+Certified Civil Trial Attorney
   Of Counsel

UNION COUNTY OFFICE
25 ½ WAVECREST AVENUE
WINFIELD, NEW JERSEY 07036
*RESPOND TO SOUTH ORANGE OFFICE*

February 24, 2004

**VIA FAX: (202) 624-8110**
**AND FEDERAL EXPRESS: (202) 624-6800**

Mr. James P. Hoffa, Jr., General President
International Brotherhood of Teamsters AFL-CIO
25 Louisiana Avenue, N.W.
Washington, D.C. 20001-2198

     Re:   Local 97 Election

Dear Mr. Hoffa:

     This letter shall serve to confirm, that we have been retained to represent Mr. Kleinerman and the "Team With Integrity"in regard to the above referenced matter.

     Mr. Kleinerman, as is clear from the attached letter from him dated February 23, 2004, has only recently received a copy of Mr. Gerow's appeal to you regarding the decision of the Joint Counsel to hold new elections for Local 97. As a result, Mr. Kleinerman, was not given the opportunity to respond to Mr. Gerow's request for a stay of the Order of the Joint Counsel. The attached enclosures make our position clear on this and other issues.

     Also, I am somewhat concerned that my client, Mr. Kleinerman, at this time,  does not have the benefit of material received by you from Mr. Gerow. As I'm sure you can imagine, this puts my client in a unfavorable position of responding to Mr. Gerow's appeal without being allow to review the evidence and/or testimony that he may have submitted.

     In addition, because of the obvious failure of Mr. Gerow to provide us with any documents on his appeal, we request everything in the file which you currently have including, but not limited to, documents received from Mr. Gerow.



Mr. James P. Hoffa, Jr., General President
page 2
February 24, 2004

Finally, please note my appearance so that along with Mr. Kleinerman, I receive a copy of all future correspondence in this matter.

Very truly yours,

John D. Feeley

Enclosure
JDF
cc: Mr. John Gerow ( Via Fax & Regular Mail)
    Mr. Don DiLeo, President, Executive Board, Joint Counsel
    Mr. Mark Kleinerman

# LA ROCCA , FEELEY, SMITH & ROSELLINI, L.L.C.
## ATTORNEYS AT LAW
### 76 SOUTH ORANGE AVENUE, SUITE 211
### SOUTH ORANGE, NEW JERSEY 07079
*TELEPHONE:* (973) 763-6100
*FACSIMILE:* (973) 763-5600

TONY LA ROCCA
JOHN D. FEELEY *
TIMOTHY R. SMITH*
* Admitted in New Jersey & D.C.
KENNETH J. ROSELLINI
*Admitted in New Jersey & New York
PABLO N. BLANCO
Admitted in NJ, Conn, & Col.
--------------------------------
NICHOLAS J. FANO
GEORGE W. CONK†
+Certified Civil Trial Attorney
    Of Counsel

UNION COUNTY OFFICE
25 ½ WAVECREST AVENUE
WINFIELD, NEW JERSEY 07036
*RESPOND TO SOUTH ORANGE OFFICE*

December 23, 2004

Mr. James P. Hoffa, Jr., General President
International Brotherhood of Teamsters AFL-CIO
25 Louisiana Avenue, N.W.
Washington, D.C. 20001-2198

**Re:**    **New Election for Officers and Trustees of IBEW (Teamsters Local 97)**

Dear Mr. Hoffa:

As you know from my previous correspondence, this firm has been retained to represent the Team With Integrity slate in connection with the above referenced matter. Unfortunately, as of this date you and/or your representatives have failed to respond to any of our inquiries.

In regard to the above referenced elections, you should already be aware from my previous letters that ballots were mailed to registered members on October 20, 2003. The returned ballots were then counted on November 20, 2003. Thereafter, a recount was conducted on December 5, 2003. After the recount, and based on our appeal of January 9, 2004, Joint Counsel 73 ordered a new election.

Unfortunately, as of this date, approximately ten months after a new election was ordered, one has yet to take place. More disturbing is the fact that you improperly and unilaterally delayed the new election without our input, but after receiving a one sided request from Mr. Gerow.

Given that our position for a new election has been supported by Joint Counsel 73, and that an appeal was made to you to confirm the decision of the Joint Counsel and not interfere with that decision, we continue to insist that a new election be conducted.

In the intrim, the Team With integrity has sought the Department of Labor's assistance in the matter. However, any action taken by them has nothing to do with the requirement that you

PLAINTIFF'S EXHIBIT
F
ALL-STATE LEGAL®

allow the new election to take place as ordered by the Joint Counsel and based upon the record of the hearing on December 8, 2003.

Furthermore, as set forth in the attached letters to the International Review Board and to the Department of Labor, the instances of corruption by Mr. Gerow and under his direction, continue to support our request for a new election.

Very truly yours,

John D. Feeley

jdf
Encl.

# LA ROCCA, FEELEY& SMITH, L.L.C.
## ATTORNEYS AT LAW
76 SOUTH ORANGE AVENUE, SUITE 211
SOUTH ORANGE, NEW JERSEY 07079

*TELEPHONE: (973) 763-6100*
*FACSIMILE: (973) 763-5600*

TONY LA ROCCA
JOHN D. FEELEY *
TIMOTHY R. SMITH*
* Admitted in New Jersey & D.C.

-------------------------------------
NICHOLAS J. FANO
GEORGE W. CONK+
+Certified Civil Trial Attorney
    Of Counsel

UNION COUNTY OFFICE
25 ½ WAVECREST AVENUE
WINFIELD, NEW JERSEY 07036
*RESPOND TO SOUTH ORANGE OFFICE*

July 7, 2004

## VIA OVERNIGHT MAIL - UPS

Mr. Ralph Gerchak, District Director
United States Department of Labor -
 Office of Labor Management Standards
201 Varrick Street
Room 878
New York, NY 10014

     **Re:**    **2003 Election in an IBT (Teamsters) Local No. 97
and Joint Council No. 73 Determination Dated
January 9, 2004 Ordering a New Election; Complaint of
Mark Kleinerman, Presidential Candidate, to Expedite
the New Election**

Dear Mr. Gerchak:

    I represent the candidates for office and for membership on the Executive Board, of IBT (Teamsters) Local 97. There were two slates of candidates. My clients who are the challengers are known as the "Team with Integrity." The incumbents, headed by a president with a history of improper activity, are known as the Great Slate, headed by incumbent President John Gerow (the Gerow Slate or the Great Slate). The election count took place on November 20, 2003. A recount was conducted on December 5, 2003. The recount resulted in a victory for the candidate for Secretary-Treasurer of the Team with Integrity, Pat Jenkins by 4 votes and a defeat of the "Team" presidential candidate, Mark Kleinerman by 17 votes.

    The Joint Council of the Teamsters held a hearing on December 8, 2003 on my appeal for a new election. There are transcripts of the hearing totaling about 200 pages as well as Exhibits submitted by the Team with Integrity along with a written position which are very extensive. There was no comparable submission by the Gerow Slate. The determination of the Joint Council dated



**PLAINTIFF'S
EXHIBIT**

Mr. Ralph Gerchak, District Director
Page 2
July 7, 2004

January 9, 2004 was that there should be an entirely new election.  The Team with Integrity immediately sought implementation of the Joint Council's decision by Mr. Gerow the President and incumbent and made this demand to Mr. Gerow on January 14.  Shockingly, the International Teamsters, unknown to Mr. Kleinerman, restrained without any input from Mr. Kleinerman the determination for a new election of the Joint Council.  To date even though a new election was ordered on January 9, no new election or any proceedings for it has been commenced.  This new election is by law pending before Mr. Hoffa, and the IBEW in Washington, D.C.  We are pursuing relief there including submitting a request to the International Review Board of the IBEW that this local, because of current misdeeds and its past record, should be placed into receivership and a proper election ordered by the receiver or alternatively that a new election be ordered pursuant to the Joint Council's determination, immediately.

Your representative, a person with two years' experience known as Yvette Hoyt, initiated an investigation as a result of Mr. Kleinerman's complaint.  Apparently the investigation went much beyond the issues raised in the complaint which centered only on asking for a new election for all positions based upon a myriad of corruption factors as well as the fact that the holder of the election, the New Jersey State Board of Mediation, issued ballots for another election which it was simultaneously holding to those who were receiving ballots and running for election for Local 97.  The latter issue was a relatively minor issue in the scope of things even though it was a major issue with regard to the Joint Council's determination.

We understand that the determination of the Department of Labor has been delayed until this Friday, July 9.

The input of my clients, namely those who have supported and have run on the slate for the Team with Integrity in connection with the investigation has been unfairly limited.  We understand unfortunately "through the grapevine" that Ms. Yvette Hoyt intends to recommend contrary to our reasons for the complaint, a new election only as to the position that the Team with Integrity won, that of Pat Jenkins for the all-important post of Secretary-Treasurer and has emphasized without any response from us that the mistaken ballots involved only ten ballots.  On this minor issue in the entire scheme of things where corruption is the major issue, we are very much concerned that Ms. Yvette Hoyt's determination improperly focuses on only one small issue, and improperly analyzes what happened.  The facts are that at a minimum by our count through witnesses, the wrong ballots involved well over 100 mistaken ballots being sent out and perhaps 200 or more.

On a broader scale, the corruption on the willful withholding of mailing lists, willful abuse of our candidates by Mr. Gerow and his representatives, the willful manipulation of membership lists and other matters appears to have been improperly ignored.

All we have sought was the implementation of the Joint Council's decision by the International IBEW.

Mr. Ralph Gerchak, District Director
Page 3
July 7, 2004

The result of our bringing a complaint on these issues seems improperly to be simply the potential ordering of a recount as to the one position, which despite the corruption, we were able to win.

We ask, therefore, that your deadline be extended so that the review, if any, by you may be properly conducted and that the determination may be consistent with our presentations and the Joint Council's decision.  Although we have summarized our issues, we present the additional following material herein:

1.    **Background**.

We submit to you here only some of the material which was submitted to Ms. Yvette Hoyt and to the Joint Council.  This consists of the presentation in writing with backup statements to the Joint Council which is our twelve-page narrative with Exhibits, as well as the transcripts of the Joint Council meeting with over 200 pages of testimony.

We focus initially by way of background on the corruption of the incumbents or at least of their president and his representatives, and the history of this as to Local 97.

The corruption tainted the election and as a matter of fact apparently "drove" the conduct of the election by the incumbents who had sole access to mailing lists and to determining those who would vote in the election, and corruptly manipulated both!

Therefore, the background of corruption cannot be ignored but should be focused on.

In 1995, the United States Department of Justice ousted the top seven officials of Teamsters Local 97 from office and placed the Local in trusteeship under the terms of a consent decree between the International Brotherhood of Teamsters (IBT) and the Justice Department.  Local 97 is the largest Teamster Local in New Jersey.  The current election was a mail ballot election and is only the second election since the trusteeship which was not supervised either by the federal government or the International Trustees.

There is further evidence of Local 97 representatives headed by Mr. Gerow and their corruption extending through the year of the election 2003.

This information has been submitted in the prior record.  Of course the investigation by your representative should have been limited to that record as is the appeal to the Joint Council and the appeal to the Washington based International Brotherhood of Teamsters.

Three key employees in 2003 of Local 97 are the following: John V. Gerow (son of the president), Kevin Gerow (son of the president), and Thomas Plinio (grandson of the president).  The

Mr. Ralph Gerchak, District Director
Page 4
July 7, 2004

attached chart shows that these individuals are and have been all Genovese crime family members.
In the year 2003, they were employed by Local 97 as follows: John V. Gerow, business agent; Kevin
Gerow, Trustee of the Good and Welfare Fund; Thomas Plinio as maintenance man. In 2003, they
all lost their jobs because of their criminal activity. The relationship to the president cannot be
disregarded. We understand that the president, himself, also has while he was an official of another
union, a record involving misappropriation of union funds. Copies of the indictments of these three
individuals are available. We can submit those as well to you. A summary of these indictments is
attached entitled "Operation Blue Collar Defendant List" which is part of the attached color chart of
"Operation Blue Collar" New Jersey State Police Genovese Crime Family.

Various criminal-type and illegal activities and statements were made involving the Gerow -
"Great Slate." For instance, the individual who was beaten by four votes as Secretary-Treasurer,
whose name is Donato DiMola at page 123 of the transcripts of the statements is quoted as saying
the following to Mr. McElhaney, a vice presidential candidate: "He called me a piece of shit and he
called me a little bitch. He said I will bend you over and fuck you so hard I'll get you pregnant." In
addition, the same Mr. DiMola at various election or union meetings, called the candidate on the
Team with Integrity who received four more votes than Mr. DiMola a "black bitch" and made other
derogatory remarks to her. Attached is a copy of a statement by Mrs. Ethel Hamilton dated
November 25, 2003 about such statements made by Mr. DiMola including calling her a "nigger" and
a "black motherfucker." We also have statements dated September 16, 2003 showing conduct of Mr.
Gerow against not only Pat Jenkins but Shirley Donnerstag and Ethel Hamilton.

We are seeking a trusteeship and an order for a new election or alternatively the reversal of
this election and the installation of the Team with Integrity because of these activities.

We bring them to your attention to let you know that the possible "apparent whitewash" of
these issues that is being recommended to you by Yvette Hoyt would be not only a reversal of a
finding of a Teamsters Joint Council in January 2004, but totally inconsistent with justice and proper
behavior.

We further understand from Ms. Pat Jenkins who, as noted above, is a member of the United
States Army Reserve called at least for now to active duty, that Mr. DiMola after his defeat continued
to receive basically the same pay and perform some of the same duties as Secretary-Treasurer under
the pretext of being called a business agent for which he receives $86,000 annually but has no local
office which he supervises, and another $20,000 as a committee member of Teamsters. In addition,
he appears to have been taking the unprecedented steps of making payments to shop stewards with
Local 97 funds totaling in the aggregate of about $3,000 per month.

2.    **Other Issues**.

The major issue of the corrupt election is that there was a willful failure to provide mailing

Mr. Ralph Gerchak, District Director
Page 5
July 7, 2004

lists of members to the Team with Integrity by Mr. Gerow and Mr. DiMola, and therefore other activities which are not contested and obviously took place and are a violation of federal law and proper election conduct. Apart from the corruption issues, the related corruption issue of not providing any names and addresses of eligible voting members or opportunity for mailings during the election is *prima facie* a basis for a re-election if not *prima facie* improper and perhaps even criminal conduct.

The specific legal aspects of this are referred to in the attached submissions to the Joint Council in Exhibit N which sets forth the Labor Management Reporting and Disclosure Act of 1959, with copies of various parts of Section 452.

It is sufficient to say that there are undisputed facts that Mr. Gerow, in support of his campaign, mailed to his members slanderous and inaccurate material, some of which is in the attached six-page document dated October 23, 2003 while at the same time willfully refusing Mr. Kleinerman's mailing professionals and representatives any rights to mail literature. The attached six-page document consists of two pages signed by Mr. Gerow and two signed by his business agents even though they identify themselves as "Member, Local 97." These are Anthony Silva and Carl Watson. We submit Mr. Gerow's own mailings to show how vitriolic his material was and how important and significant in this election was his refusal to allow the Team with Integrity to have any mailings or mailing lists.

So far as we know, the undisputed facts are as set forth in our submissions to the Joint Council and in the attached documents on these issues. Initially a mailing service was used headed by Ms. Maritza Torres-Falu to mail Team with Integrity material. The same Donato DiMola who is referred to above rejected this professional mailer's request for a mailing. Mr. DiMola was the Secretary-Treasurer of Local 97 and running for the same office on the Team with Integrity. Exhibit D in the submissions to the Joint Council is a letter dated October 17, 2003 signed by Ms. Torres-Falu reciting that Mr. DiMola threatened her even if she would contact Local 97 with regard to the mailings in question which were already prepared and which the Team with Integrity was prepared to pay for. Further, Benny Cardona of the Team with Integrity delivered flyers for such mailing to the Local 97 office, again offering to pay for the mailings. He was cursed out and these mailings were also refused using the pretext that they were "not folded correctly." On October 24, 2003 when Mr. Cardona was on a second time denied by Mr. Gerow the right to mail the flyers even though the so-called "folding" was correct, Mr. Gerow and two of his business agents were using the mailing lists which were denied the Team with Integrity for their own mailings.

The transcript of the proceedings before the Joint Council as well as the submissions clearly demonstrates this and we know of nothing to contradict this improper election behavior.

3. **The issue of the wrong ballots being sent by the local New Jersey State Board of Mediation (Board) to those identified as those who should receive correct ballots**.

Mr. Ralph Gerchak, District Director
Page 6
July 7, 2004

        This is again a matter which was presented to the Joint Council and therefore is supported by the submissions which have already been made and the testimony. We understand that Ms. Yvette Hoyt has accepted the bland and uncorroborated statement which has been specifically refuted by at least four witnesses for the Team with Integrity, that only ten ballots were an issue and that therefore on this issue alone, disregarding all other issues, she recommends a new election but only as to Ms. Pat Jenkins, Secretary-Treasurer who was the only member of the Team with Integrity who at least in this fraudulent count, received more votes than the incumbent, Mr. DiMola.

        We have demonstrated that at the same time the Board of Mediation was mailing out ballots for the Local 97 election, it was also mailing out ballots for elections for Teamsters Locals 197 and 194. Although it is difficult to determine because of the error, the number of such ballots so sent, Team with Integrity representatives calculate this number to be at least 150 and probably many more. Exhibit M is an example of this in which a supporter of Team with Integrity telephoned the Team with Integrity representatives (a copy of this wrong ballot is also attached) asking for help. That individual said he was sent that ballot in error on the ballot and he wanted to cast his vote for the Team with Integrity.

        Although we believe this issue is just one of many supporting the new election, it was ironic that there be a new election as to the Team with Integrity winner only, solely on this issue claiming that the State Board of Mediation stated that only ten such ballots could possibly have been sent out.

        The fact of the ballots which were actually received and sent out, 7,000 of about 10,000 eligible, 5,512 failed to return ballots, help support the position of the Team with Integrity as to the mishandling of these ballots. Less than 15% voted.

## 4.     Other Misdeeds and Election Errors raised by the Team with Integrity.

        We have also pointed out a number of other basis, and point out now a number of other egregious examples, of improper if not criminal manipulation of the election. These are supported by the attachments. For instance, there was a willful failure to process 56 to 59 Team with Integrity supporters who sought to pay full dues so that they could be eligible to vote and whose applications were supposed to be processed within 30 days; these were willfully not processed within that time frame and as a result of this willful action by Mr. Gerow and his representatives, these individuals were denied the right to vote. They were all supporters of the Team with Integrity and the affidavit of Manny Segundo supports this.

        In addition to this, there are as set forth in Exhibit G, another copy of which is attached hereto, 49 employees at Silver Line, all of whom are Spanish speaking, who because Silver Line a major employer is required to have all employees become full dues paying checkoff members, were simply not allowed, improperly to vote by Mr. Gerow and were not on the mailing list. The names

Mr. Ralph Gerchak, District Director
Page 7
July 7, 2004

of these employees are attached as Exhibit G and another copy is attached here. Enclosures further demonstrate the many issues supporting the determination of the Joint Council, and the continuing corruption issues with this Local 97. Accordingly, even though we are on the same day submitting our appeals for a trusteeship or alternatively for a new election to both the International Review Board and to Mr. Hoffa.

Very truly yours,


JOHN D. FEELEY

Enclosures

cc:    Ms. Yvette Hoyt

International Review Board of IBEW, C. Thomas Keegal, International (IBEW) Secretary-Treasurer, 25 Louisiana Avenue, N.W., Washington, D.C. 20001-2198 (VIA OVERNIGHT MAIL - UPS)

Mr. James P. Hoffa, Jr., General President, International Brotherhood of Teamsters AFL-CIO 25 Louisiana Avenue, N.W., Washington, D.C. 20001-2198 (VIA OVERNIGHT MAIL - UPS)

**U.S. Department of Labor**      Employment Standards Administration
                                  Office of Labor-Management Standards
                                  New York District Office
                                  201 Varick Street, Suite 878
                                  New York, NY 10014
                                  (646)264- 3190 / FAX: (646) 264-3191



July 13, 2004

Mr. John Gerow, President                    *Klienerman*
Teamsters Local 97
485 Chestnut Street
Union, NJ 07083

Dear Mr. Gerow:

This will acknowledge your letter to me dated July 8, 2004 and accept the agreement of
Teamsters Local 97 to conduct new nominations, election and installation for the office of
Secretary-Treasurer on or before February 28, 2006 under the supervision of the Secretary
of Labor and in accordance with Title IV of the LMRDA.

Furthermore, this will accept the waiver of Teamsters Local 97 relating to the timeliness of
any and all actions required to be taken by the Secretary pursuant to Section 402 of the
Labor-Management Reporting and Disclosure Act of 1959, as amended (LMRDA), arising
from or relating to the challenged election of officers conducted by Teamsters Local 97 on
November 20, 2003.

In consideration of this agreement and waiver of Teamsters Local 97, it is agreed that legal
proceedings will not be initiated at this time, but the right of the Secretary to initiate such
proceedings is reserved until March 31, 2006.

Any dispute arising during the course of the supervised election as to the legality or
practicability of any election procedure shall be decided by the representative of the
Secretary of Labor.

A member of my staff will be contacting you in the near future to schedule a pre-election
conference to discuss the necessary rules and work out arrangements for the supervised
election. No action pertaining to the election should be taken by Local 97 until that time. If
you have any questions, please do not hesitate to contact me at 646/264-3190.

Sincerely

Ralph Gerchak,
District Director

cc:  IBT President James Hoffa

     Complainant Mark Kleinerman

ALL-STATE LEGAL
PLAINTIFF'S
EXHIBIT
H

**U.S. Department of Labor**     Employment Standards Administration
Office of Labor-Management Standards
Washington, D.C. 20210



JUL 1 5 2004

Mr. Mark Kleinerman
31-19 Morlot Avenue
Fair Lawn, New Jersey 07410-4025

Dear Mr. Kleinerman:

Your complaint to the Department of Labor, Office of Labor-Management Standards
(OLMS) protesting the November 20, 2003 election of officers in Teamsters, Local 97,
Union, New Jersey, has been investigated pursuant to Sections 402 and 601 of the Labor-
Management Reporting and Disclosure Act of 1959, as amended.

Following a review of the investigative findings by this office and the Office of the
Associate Solicitor for Labor-Management Laws, a decision has been made that there
was only an effect on outcome concerning the race for the Secretary-Treasurer position.
(A copy of the July 13, 2004 letter from OLMS New York District Director Ralph
Gerchak accepting the agreement of Teamsters Local 97 to conduct new nominations,
election and installation for the office of Secretary-Treasurer on or before
February 28, 2006 has been sent to you separately.) The findings of the investigation did
not provide a basis for action by the Department for any other position in the protested
election.

We have received the July 7, 2004 letter from attorney John D. Feeley to OLMS District
Director Gerchak on behalf of your slate of candidates. We will respond to the letter at a
future date, addressing the allegations raised in your election complaint and explaining
why only the Secretary –Treasurer position was affected. The response, however, will
not address any new issues which were raised subsequent to your election protest.

Sincerely,

John N. Heaney/DF

John H. Heaney, Chief
Division of Enforcement

